UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCHESCA FORD, ISABEL RODRIGUEZ individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CEC ENTERTAINMENT INC. D/B/A CHUCK E. CHEESE'S, a Kansas Corporation,<br><br>Defendants. | Case No.: 14cv677 JLS (JLB)<br><br>**ORDER (1) APPROVING FINAL CLASS ACTION SETTLEMENT AND (2) GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**<br><br>(ECF Nos. 40, 42) |

Presently before the Court are Plaintiffs' Motion For Final Approval of Class Action Settlement, (ECF No. 42), Plaintiffs' Motion for Attorneys' Fees, Expenses, and Incentive Awards, (ECF No. 40), and Defendant's Statement of Non-Opposition to (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and (2) Plaintiffs' Motion for Attorneys' Fees, Expenses and Incentive Awards, (ECF No. 45).

For reasons stated below, the Court **GRANTS** the Plaintiffs' Motions.

## BACKGROUND

This case arises out of Defendant's alleged violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. sections 1681b(b)(2)(A) and 1681d(a); the California Consumer

Credit Reporting Agencies Act, Cal. Civ. Code section 1785, *et seq.*; and the California Investigative Consumer Reporting Agencies Act, Cal. Civ. Code section 1786, *et seq.* (ECF No. 40, at 12–13.)[1] Plaintiffs allege that Defendant willfully violated the FCRA and related statues by using background check disclosure forms in its employment applications that contained a waiver of rights that did not comply with requirements of the FCRA and related statutes. (*Id.* at 13.) Defendant estimates that it procured background checks for approximately 28,500 people who executed these forms (Settlement Class). (*Id.*) Plaintiffs also claim that Defendant took adverse employment actions with respect to approximately 440 people as a result of the background checks (Adverse Action Subclass). (Order, ECF No. 39.)

On July 7, 2015, the Court granted Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and set the Final Approval Hearing for Thursday, December 3, 2015, at 1:30 p.m. (Order, ECF No. 39.)

Plaintiffs now ask the Court to grant final approval of (1) this class settlement agreement; (2) the settlement administration costs of $78,500; (3) an award of attorneys' fees in the amount of one-third of the common fund, or $583,500, and $7,888.92 in costs and expenses to Class Counsel; and (4) the class representative incentive awards of $5,000 to plaintiff Franchesca Ford and $2,500 to plaintiff Isabel Rodriguez. (ECF Nos. 40 & 42.) The Court held a hearing on Plaintiffs' Motions on December 3, 2015.

**TERMS OF THE PROPOSED SETTLEMENT AGREEMENT**

The proposed Settlement Class consists of "all individuals for whom [Defendant] CEC obtained a background check from a third-party credit reporting agency between March 24, 2012, and July 7, 2015, without fully complying with the disclosure and authorization requirements of the FCRA, the California Consumer Credit Reporting Agencies Act and the California Investigative Consumer Reporting Agencies Act." (Mot.

---

[1] For ease of reference, page citations to docketed materials refer to the electronically stamped CM/ECF page number.

for Final Approval, ECF No. 42, at 12.) The Adverse Action Subclass consists of "members of the Settlement Class against whom CEC took an adverse employment action based on the background check that CEC procured." (*Id.*) Defendant has agreed to settle the class claims with Plaintiffs for a Maximum Settlement Sum of $1,750,500. (*Id.*) This amount includes:

> (1) individual settlement payments to the Participating Settlement Class Members and Adverse Action Subclass Members; (2) a class representative enhancement of up to $5,000 to the Class Representative Plaintiff Franchesca Ford and a separate enhancement of up to $2,500 for Plaintiff Isabel Rodriguez; (3) payment to Class Counsel of attorneys' fees in an amount not to exceed 33.3% of the Settlement Class Maximum Settlement Sum; (4) Class Counsel's reasonable, documented expenses attributable to the Settlement Class part of the Settlement; and (5) the reasonable fees and expenses of the Settlement Administrator attributable to the administration of the Settlement Class part of the Settlement in an amount not to exceed $80,000.

(*Id.* at 12–13.) Additionally, $40,500 of the fund is allocated to the Adverse Action Subclass "from which the Settlement Administrator will pay Subclass members less attorneys' fees and costs of the amount allocated to the Subclass and settlement administration costs of no more than $1,500." (*Id.* at 13.) Lastly, Defendant has agreed to make changes to its background check and disclosure forms to comply with applicable law and has already implemented new forms in all states in which it does business. (*Id.* at 13.) The Parties have negotiated a default automatic payment procedure whereby all Class Members are entitled to receive a check for approximately $38 without having to submit a claim form. (*Id.* at 14.) Adverse Action Subclass Members are entitled to receive an additional $74. (*Id.*)

In exchange for the benefits of the settlement, Settlement Class and Adverse Action Subclass members who have not timely or properly opted out of the settlement agree to release their claims against Defendant arising from or related to the facts asserted in the operative Complaint. (*Id.* at 13.) This includes:

(i) any claim for an alleged violation of any provision of the disclosure and authorization requirements of the Fair Credit Reporting Act, 15 U.S.C. sections 1681b(b)(2)(A) and 1681d(a), the California Consumer Credit Reporting Agencies Act, California Civil Code section 1785, *et seq.*, the California Investigative Consumer Reporting Agencies Act, California Civil Code section 1786, *et seq.* or any comparable provision of federal, state or local law in any way relating to or arising out of the procurement of, use of, disclosure of intent to procure, or authorization to procure or use a consumer report, investigative consumer report, credit check, background check, criminal history report, reference check or similar report ("Settlement Class Released Claims") and (ii) any claim for an alleged violation of any adverse action requirements of the Fair Credit Reporting Act, 15 U.S.C. section 1681, *et seq.*, including, without limitation, 15 U.S.C. section 1681(b)(3)(A), the California Consumer Credit Reporting Agencies Act, California Civil Code section 1785, *et seq.*, the California Investigative Consumer Reporting Agencies Act, California Civil Code section 1786, *et seq.* or any comparable provision of federal, state or local law in any way relating to or arising out of an adverse action ("Adverse Action Subclass Released Claims").

(*Id.* at 13–14.) Plaintiffs Ford and Rodriguez also agree to release any known or unknown claims they may have against Defendant.

## MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

A threshold requirement for final approval of the settlement of a class action is the assessment of whether the Class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of one of the types of class actions enumerated in subsection (b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019, 1022 (9th Cir. 1998). No facts that would affect these requirements have changed since this Court preliminarily approved the Class on July 7, 2015. Accordingly, this Order incorporates by reference its prior analysis under Rules 23(a) and (b) as set forth in the Preliminary Approval Order. (ECF No. 39, at 4–9.)

Moreover, before granting final approval of a class-action settlement, the Court must determine that the Class received adequate notice. *Hanlon*, 150 F.3d at 1025. "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Id.* This Court

preliminarily approved the parties' proposed notice plan (Notice Plan).  (*See* Prelim. Approval Order ECF No. 39, at 12–13.) On November 12, 2014, class action administrator Geraci (Class Administrator) filed a declaration detailing the actions he has taken with regard to this class action, including providing notice. (*See* Geraci Decl., ECF No. 42-2.) A review of the declaration and attached exhibits reveals that the Class Administrator provided notice in accordance with the Notice Plan.  Accordingly, the Court **FINDS** that the Settlement Class and Adverse Action Subclass received adequate notice of the Settlement, and of their opportunity to submit claims, opt out, or object.  The Court further **FINDS** that the notice was the best notice practicable under the circumstances; was valid, due, and sufficient notice to all Class Members; and complied fully with the laws of the United States of America and due process.  The Class Notice fairly and adequately described the Settlement and provided Class Members with adequate instructions and a variety of means to obtain additional information.

Finally, under Federal Rule of Civil Procedure 23(e)(2), where the proposed settlement would bind class members, the court may approve it only after a hearing and on finding that the settlement is fair, reasonable, and adequate. The Ninth Circuit has enumerated various factors that the court should consider in determining whether a proposed settlement meets the fair, reasonable, and adequate standard, including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; (8) and the reaction of the class members to the proposed settlement. *Hanlon*, 150 F.3d at 1026.  This determination is committed to the sound discretion of the trial judge. *Id.*

As noted in the Preliminary Approval Order, the Settlement is the result of arms'-length negotiations conducted over several months, including three Early Neutral

Evaluation sessions before Magistrate Judge Burkhardt. (Prelim. Approval Order ECF No. 39, at 9.)

The Court now addresses each of the *Hanlon* factors in turn.

## I.    Strength of Plaintiffs' Case

To succeed on the merits, Plaintiffs would have to prove that Defendant's violations were "willful." (Mot. for Final Approval, ECF No. 42, at 18.) Defendants may claim defenses such as "reasonable construction" of their statutory duties or perhaps even "careless construction." (*Id.*) These defenses along with Plaintiffs' burden of proof would make proving liability difficult. (*See id.*) In addition, some courts have categorically rejected the theory of liability in cases with very similar facts, so Plaintiffs face a substantial risk of complete loss. (*Id.* at 19.)

Further, the United States Supreme Court heard argument on November 2, 2015 in *Spokeo, Inc. v. Robins*, No. 13-1339 (2015), on whether Article III of the Constitution grants standing to a plaintiff who claims a statutory violation of the FCRA without showing concrete injury. (*Id.*) A decision in favor of the defendants in that case could extinguish the Plaintiffs' cause of action. (*Id.*)

Accordingly, in light of the challenges Plaintiffs would face moving forward, the proposed settlement represents a fair and adequate resolution of Plaintiffs' claims.

## II.    Risk, Expense, Complexity, and Likely Duration of Further Litigation

Class Counsel believes that settling this matter will substantially benefit the Class, especially considering "the uncertain legal landscape," substantial costs of such complex litigation with more than 28,000 class members, and Defendant's potential liability were the case to succeed on the merits. (*Id.* at 20–21.) The potential for lengthy and protracted litigation, including an interlocutory appeal and an appeal after trial, is a potential risk for this type of case. (*Id.*) Accordingly, this factor weighs in favor of settlement.

## III.    Risk of Maintaining Class Action Status Throughout the Trial

The Parties also argue that there is a risk that the class ultimately would not be certified, or, if the class were certified, that Defendants would appeal the certification or

1 that the class might later be de-certified. (*Id.* at 21.) Weighed against the fact that Defendants do not object to a finding that the class elements are met for the purposes of this settlement, this factor also weighs in favor of settlement.

## IV. Amount Offered in Settlement

The FCRA provides for statutory damages between $100 and $1,000 for a willful violation. 15 U.S.C. § 1681n(a)(1)(A). As discussed above, it is unclear whether Plaintiffs would be able to prove that Defendant's actions were willful. And, without a showing of actual injury, it is unlikely that Class Members would receive the maximum statutory damages. The Amended Settlement Agreement requires Defendants to pay a total of $1,750,000. The Class Members will receive $38 in actual cash payments without having to file a claim. (Mot. for Final Approval 23, ECF No. 42, at 22.) In addition, the Adverse Action Subclass will receive additional cash payment of $74. Class members will receive monetary compensation, rather than a coupon or an in-store gift card. Given the risks of litigation and the potential statutory damages, the amount offered in settlement is fair and reasonable, and this factor weighs in favor of settlement.

## V. Extent of Discovery Completed and Stage of the Proceedings

Before agreeing to settle this matter, the parties engaged in substantial discovery, which included reviewing background check disclosures, authorization and release forms, and background check policies and handbooks. (*Id.* at 23.) In addition, Plaintiffs deposed Defendant and obtained class information from Defendant's credit reporting agency. (*Id.*) The case also went through the Early Neutral Evaluation process which encouraged the settlement. Class Counsel gained significant knowledge of the relevant facts and law throughout the discovery process and through its independent investigation and evaluation. Consequently, this factor weighs in favor of settlement.

## VI. Experience and Views of Counsel

Class Counsel believes the Settlement Agreement is fair, reasonable, and adequate and in the best interest of the Settlement Class. (*Id.* at 24) "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel*

*Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).  Here, the presumption of reasonableness is warranted based on Class Counsel's expertise in complex litigation, familiarity with the relevant facts and law, and significant experience negotiating other class and collective action settlements.  Thus, based on the judgment of these experienced counsel, this factor suggests the Settlement is fair, reasonable, and adequate.

**VII.  Reaction of Class Members to the Proposed Settlement**

As of the filing of Plaintiffs Motion for Final Approval on November 12, 2015, the Settlement Administrator had mailed 27,131 notices to Class Members.  (*Id.* at 24.)  Of those, no Class Member objected and only eight Class Members had opted out of the Settlement.  (*Id.*)  As Plaintiffs point out, that amounts to only .03 percent of Class Members opting out.  (*Id.*)  Counsel for Plaintiffs stated no additional Class Members had opted out or objected as of the date of the hearing on this Motion.  Thus, the low percentage of Class Members who opted out and the complete absence of objection amount to an overall positive response by Class Members to the Class Settlement.

**VIII.  Requested Payment to the Claims Administrator**

The Claims Administrator "promptly and properly distributed the Class Notice to all Class Members and completed its duties in accordance with the settlement terms and the Court's preliminary approval Order."  (*Id.* at 25–26; Geraci Decl., ECF No. 42-2.)  The Claims Administrator estimates the cost to administer the Class Settlement will be $78,500.  (Geraci Decl., ECF No. 42-2, at 3.)  The Court **FINDS** these costs reasonable in light of the size and scope of the Settlement Class and Adverse Action Subclass and the terms of the Class Settlement.

**IX.  Conclusion**

Because all of the pertinent factors here weigh in favor of approving the Class Settlement, the Court **GRANTS** the Plaintiffs' Motion For Final Approval of Class Action Settlement.

/ / /

/ / /

# MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS

Pursuant to the Settlement Agreement, Defendant has agreed not to object to or oppose Plaintiffs' application for attorneys' fees and litigation expenses, provided that Class Counsel seeks no more than one-third of the $1,750,000 Maximum Settlement Fund. (Friedl Decl. 25, ECF No. 36-1.) In addition, the Settlement Agreement provides for up to a $5,000 incentive payment to Francesca Ford and a $2,500 incentive payment to Isabel Rodriguez. (*Id.* at 24.)

## I. Attorneys' Fees

### A. *Legal Standard*

Federal Rule of Civil Procedure 23(h) permits a court to award reasonable attorneys' fees "authorized by law or by the parties' agreement." In a diversity suit, the award of attorneys' fees is governed by state law. *See Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 829 (9th Cir. 2009) (citation omitted); *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1024 (9th Cir. 2003) (citation omitted).

The Court has discretion to award attorneys' fees based on "the percentage-of-the-fund method or the lodestar/multiplier approach." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295–96 (9th Cir. 1994). The Ninth Circuit has routinely applied the percentage-of-the-fund approach, treating twenty-five percent as the "benchmark." *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 378–79 (9th Cir. 1994). Despite this benchmark, however, district courts have discretion to "[a]djust the benchmark when special circumstances indicate a higher or lower percentage would be appropriate." *Id.* at 379. As several courts have observed, "most" settlements involving a common fund, as this Settlement involves, exceed the twenty-five percent benchmark. *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008); *Pokorny v. Quixtar, Inc.*, No. C 07-0201 SC, 2013 U.S. Dist. LEXIS 100791 *4 (N.D. Cal. July 18, 2013) (the "Ninth Circuit uses a 25% baseline in common fund class actions, and 'in most common fund cases, the award exceeds that benchmark,' with a 30% award the norm 'absent extraordinary circumstances that suggest reasons to lower or increase the percentage.'").

In determining the reasonableness of a percentage-of-the-fund award, courts may compare the amount to be received as a percentage to the lodestar amount. *See, e.g.*, *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376–77 (9th Cir. 1993).

### B. *Analysis*

Class Counsel seeks up to one-third of the Maximum Settlement Fund of $1,750,500, or a total of $583,500. This percentage of the common fund is in line with other attorneys' fees awards in California. Further, Class Counsel achieved what may be deemed a favorable settlement for the Class Members, whereby they will receive $38 in cash automatically, and for which the Adverse Action Subclass stands to receive an additional $74. Class Counsel also negotiated for nonmonetary relief of Defendant changing its background check disclosure forms, presumably conferring the benefit of a greater degree of compliance with the governing statutes.

Class Counsel successfully negotiated automatic payments for a class of individuals that in all likelihood may have never received any compensation or redress for the conduct complained of, and by settling the matter at this stage in the litigation avoided draining further resources of the parties and the Court, and running the risk that Class Members would recover nothing.

Further, Class Counsel took this case on a pure contingency basis, and thereby risked fronting significant costs and devoting a substantial amount of time to this matter with no guarantee of compensation. (Mot. for Attorneys' Fees, ECF No. 40, at 23.) Class Counsel states that they spent more than 600 hours litigating this case and paid $7,888.92 in out-of-pocket costs. (*Id.*) Both the Ninth Circuit and California Supreme Court have emphasized the importance of rewarding attorneys who take cases on contingency. *See, e.g.*, *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001); *In re Washington Pub. Power Supply.*, 19 F.3d at 1291, 1300–01 (9th Cir. 1994).

The attorneys' fee award is also in step with a reasonable lodestar calculation, which involves "multiplying the number of hours . . . reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for

the experience of the lawyer." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

As of the date of their Motion for Attorneys' Fees, Class Counsel had spent 613.3 hours on this litigation. (Friedl Decl., ECF No. 40-1, at 4.) The stated hourly rates of the attorneys comprising Class Counsel range from $370 per hour for the most junior lawyer to $695 per hour for the three most senior lawyers. (*Id.*) These rates multiplied by the hours expended add up to $364,646. (*Id.*) Plaintiffs cite several cases in which courts applied hourly rates at or exceeding this amount for attorneys at Class Counsel's law firm. (*See* Mot. for Attorneys' Fees, ECF No. 40, at 28.) In the lodestar comparison, Plaintiffs apply a "modest lodestar multiplier of 1.6," arriving at the requested fee amount of $583,500. (*Id.*)

As the Ninth Circuit noted in *Vizcaino v. Microsoft Corp.,* "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases." 290 F.3d 1043, 1051 (9th Cir. 2002). In *Viczaino*, the court analyzed a table of multipliers that had been used in other cases and approved a multiplier of 3.65 for that case. *Id.* By comparison, a multiplier of 1.6 is reasonable in light of the complexity of and risk involved in this case. *See id.*

In sum, because of the complexity of this case, the favorable results achieved by Class Counsel in the Settlement Agreement, and the risk Class Counsel assumed by taking this case on contingency, the Court **FINDS** that an award of one-third of the common fund is reasonable.

## II.     Costs

Attorneys may recover litigation expenses separately from their fees when it is "the prevailing practice in the local community" to bill those costs separately. *Trs. of the Constr. Indus. and Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006).

Class Counsel expended $7,888.92 in costs, including court fees, court reporter charges, delivery and messenger charges, investigators, and travel expenses, all of which

Plaintiffs state would "normally be billed to a paying client." (Mot. for Attorneys' Fees, ECF No. 40, at 31; Friedl Decl., ECF No. 40-1, at 6.)

The Court **FINDS** that these costs would be billed separately from hourly fees to a paying client, and are reasonable in light of the scope and complexity of this litigation.

## III. Incentive Awards

Class Counsel seek incentive awards of $5,000 for Ms. Ford and $2,500 for Ms. Rodriguez. (Mot. for Attorneys' Fees, ECF No. 40, at 32–33.) Incentive awards are "fairly typical" discretionary awards "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (citations omitted). In deciding whether to give an incentive award, the Court may consider:

> 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (citations omitted).

The class representatives took on reputational risk by litigating claims against an employer or prospective employer, and now face the possibility of being screened out of future positions by employers seeking to avoid hiring litigious employees. (Mot. for Attorneys' Fees, ECF No. 40, at 33.) Additionally, the class representatives assisted the attorneys in this case by attending mediation and remaining otherwise involved during the course of this litigation. (*Id.* at 34.) Absent such an award, the class representatives would receive a fairly insubstantial sum considering the amount of effort they put forth, and in addition to the claims released by Class Members, the class representatives agreed to release all claims they may have against Defendant. (*Id.*)

The Plaintiffs seek a greater award for Ms. Ford because on two occasions she traveled from her home in Sacramento, California to San Diego, California to meet with her attorneys, participate in Early Neutral Evaluation Conferences before Magistrate Judge Burkhardt, and to discuss the case with her attorneys. (*Id.* at 35.)

Based on these factors, the Court **FINDS** these incentive awards are reasonable.

**IV.  Conclusion**

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Attorneys' Fees, Expenses and Incentive Awards.

**CONCLUSION**

For the reasons stated above, the Court **GRANTS** Plaintiffs' Motion For Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Expenses, and Incentive Awards.

Defendants **SHALL PAY** Plaintiffs' costs and expenses of **$7,888.92**, attorneys' fees of **$583,500** to Plaintiffs' Counsel, and incentive awards of **$5,000** to plaintiff Franchesca Ford and **$2,500** to plaintiff Isabel Rodriguez.

The Court **FURTHER ORDERS**:

1.  **Rule 23 Requirements Satisfied.** For the reasons set forth in the Preliminary Approval Order and in the transcript of the proceedings of the Preliminary Approval hearing, which are adopted and incorporated herein by reference, this Court finds that the requirements of Rule 23 have been satisfied.

2.  **Implementation of Settlement.** This Order hereby adopts and incorporates by reference the terms and conditions of the Class Action Settlement Agreement ("Settlement Agreement"), together with the definitions and terms used and contained therein.

3.  **Jurisdiction.** The Court finds that it has jurisdiction over the subject matter of this action and over all parties to it, including all members of the Settlement Class.

**4.     Class Notice Adequate.** The Class Notice fully and accurately informed Class Members of all material elements of the proposed settlement and of their opportunity to submit claims, opt out, or object; was the best notice practicable under the circumstances; was valid, due, and sufficient notice to all Class Members; and complied fully with the laws of the United States of America and due process.  The Class Notice fairly and adequately described the settlement and provided Class Members with adequate instructions and a variety of means to obtain additional information.

**5.     Class Members Bound.** Class Members were given a full opportunity to participate in the Final Approval hearing, and all Class Members and other persons wishing to be heard have been heard.  Accordingly, the Court determines that all Class Members who did not timely and properly opt out of the settlement are bound by this Order.  All Class Members were given a full and fair opportunity to participate in the Approval Hearing, and all members of the Settlement Class wishing to be heard have been heard. Members of the Settlement Class also have had a full and fair opportunity to exclude themselves from the proposed settlement and the class.  Accordingly, the terms of the Settlement Agreement and of the Court's Order shall be forever binding on all Class Members who did not timely and properly opt out of the settlement.  These Class Members have released and forever discharged the Defendant for any and all Released Claims.

**6.     Fairness, Adequacy, Reasonableness.** The Court has considered all relevant factors for determining the fairness of the settlement and has concluded that all such factors weigh in favor of granting final approval.

**7.     Settlement Approved.** Accordingly, the Court hereby approves the settlement as set forth in the Settlement Agreement and expressly finds that the settlement is, in all respects, fair, reasonable, adequate, and in the best interests of the entire Settlement Class.  The Court hereby directs implementation of all remaining terms, conditions, and provisions of the Settlement Agreement.  The Court also finds that settlement now will avoid additional and potentially substantial litigation costs, as well as delay and risks if the Parties were to continue to litigate the case.  Additionally, after considering the monetary

recovery provided by the settlement in light of the challenges posed by continued litigation, the Court concludes that the settlement provides Class Members with fair and adequate relief.

**8. Settlement Not an Admission of Liability.** The Settlement Agreement is not an admission by Defendant or by any other released party, nor is this Order a finding of the validity of any allegations or of any wrongdoing by Defendant or any other released party. Neither this Order, the Settlement Agreement, nor any document referred to herein, nor any action taken to carry out the Settlement Agreement, may be construed as, or may be used as, an admission of any fault, wrongdoing, omission, concession, or liability whatsoever by or against Defendant or any of the other released parties.

**9. Class Definitions.** Final approval shall be with respect to:

**Settlement Class:** All persons for whom Defendant ordered or obtained a background check or report of any type (including, without limitation, a credit check or report, a consumer credit report, an investigative consumer report, a criminal history report or a reference check) from any third party, including, without limitation, General Information Services, at any time from March 24, 2012, through and including the Preliminary Approval Date, without complying fully with the disclosure and authorization requirements of the Fair Credit Reporting Act, 15 U.S.C. sections 1681b(b)(2)(A) and 1681d(a), the California Consumer Credit Reporting Agencies Act, California Civil Code section 1785, et seq., the California Investigative Consumer Reporting Agencies Act, California Civil Code section 1786, et seq., or any comparable provision of federal, state, or local law governing background checks, credit checks, consumer credit reports, investigative consumer reports, criminal history reports, or reference checks.

**Adverse Action Subclass:** All persons that Defendant subjected to adverse employment action (as defined by the FCRA, 15 U.S.C. section 1681, et seq.) Including, without limitation, a decision not to offer employment , promotion, or transfer or to terminate employment at any time from March 24, 2012, through and including the Preliminary Approval Date of the Settlement, based in whole or in part, upon a background check or report of any type (including, without limitation, a credit check or report, a consumer credit report, an investigative consumer report, a criminal history report or a reference check) that Defendant ordered or obtained from any third party including, without limitation, General Information Services, Inc. without complying fully with

the disclosure and authorization requirements of the Fair Credit Reporting Act, 15 U.S.C. sections 1681b(b)(2)(A) and 1681d(a), the California Consumer Credit Reporting Agencies Act, California Civil Code section 1785, et seq., the California Investigative Consumer Reporting Agencies Act, California Civil Code section 1786, et seq., or any comparable provision of federal, state, or local law governing background checks, credit checks, consumer credit reports, investigative consumer reports, criminal history reports, or reference checks.

**10.  Class Representatives.**  Plaintiffs Franchesca Ford and Isabel Rodriguez are suitable representatives and are hereby appointed the representatives for the Settlement Class.  The Court finds the representatives' investment and commitment to the litigation and its outcome ensured adequate and zealous advocacy for the Settlement Class, and that their interests are aligned with those of the Settlement Class.

**11.  Plaintiffs' Counsel.**  The Court finds that the attorneys at Capstone Law APC have the requisite qualifications, experience, and skill to protect and advance the interests of the Settlement Class.  The Court therefore finds that Capstone Law APC satisfies the professional and ethical obligations attendant to the position of Class Counsel, and hereby appoints Capstone Law APC as counsel for the Settlement Class.

**12.  Claims Administration Costs.**  The Court approves claims administration costs and expenses in the amount of $78,500 to Kurtzman Carson Consultants, LLC.

**13.  Payment to Class.**  Defendant shall pay Class Members pursuant to the procedure described in the Settlement Agreement.  Defendant shall have no further liability for costs, expenses, interest, attorneys' fees, or for any other charge, expense, or liability, except as provided in the Settlement Agreement.

**14.  Class Participation.**  All Class Members were given a full and fair opportunity to participate in the Approval Hearing, and all members of the Settlement Class wishing to be heard have been heard.  Members of the Settlement Class also have had a full and fair opportunity to exclude themselves from the proposed settlement and the class. Accordingly, the terms of the Settlement Agreement and of the Court's Order shall be forever binding on all Class Members who did not timely and properly opt out of the

1  settlement.  These Class Members have released and forever discharged the Defendant for
2  any and all Released Claims.
3  **IT IS SO ORDERED.**
4  Dated:  December 14, 2015

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge